# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:26-CR-67-TAV-JEM |
| | ) | |
| GARY JAMES SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the United States's Emergency Motion Under 18 U.S.C [§] 3145 for Revocation of Magistrate Judge's Release Order [Doc. 13]. Defendant responded in opposition [Doc. 25]. United States District Thomas A. Varlan referred this motion to the undersigned for report and recommendation [Doc. 15 p. 3]. *See* 28 U.S.C. § 636(b). The Government asks the Court to revoke Defendant Gary Smith's conditions of release imposed following his arrest and a detention hearing in the Northern District of Georgia. After a de novo review, and assuming Defendant has rebutted the presumption, the undersigned finds that Defendant poses a danger to others and that no condition or combination of conditions that will reasonably assure the Court of the safety of the community and the Defendant's appearance as required. Accordingly, the undersigned recommends that the District Judge grant the Government's motion to revoke the release order.

## I.     PROCEDURAL BACKGROUND

On May 27, 2026, the Grand Jury returned an Indictment charging Defendant Gary Smith, eleven named coconspirators, and unnamed others with conspiring to distribute 50 grams or more

of a methamphetamine, a Schedule II controlled substance, from November 25, 2025, through May 27, 2026, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) [Doc. 3 pp. 1–2].

Defendant was arrested in Rome, Georgia on June 2, 2026, and had his initial appearance in the Northern District of Georgia on June 3, 2026 [Doc. 17 p. 1]. Defendant requested a detention hearing in that district, which a magistrate judge held the same day [*Id.*].

## II.      JUNE 3 DETENTION HEARING IN THE NORTHERN DISTRICT OF GEORGIA

Defendant appeared for a detention hearing before Magistrate Judge John H. Rains IV in the Northern District of Georgia on June 3, 2026 [*Id.*].[1] Assistant United States Attorney Jonell Lucca represented the Government [*Id.*]. Assistant Federal Defender Colin Garrett represented Defendant, who was also present [*Id*]. The Government moved for pretrial detention at the behest of the prosecution in charging district. Defendant requested a hearing in the arresting district and release on conditions.

AUSA Lucca proceeded by proffer, stating that during the time of the conspiracy, Defendant was employed as a school bus driver. She alleged that while so employed, Defendant engaged in the sale of methamphetamine, including to a confidential informant and to an undercover officer. AUSA Lucca averred that officers executed a search warrant at Defendant's residence in the Northern District of Georgia and seized 775 grams of methamphetamine and a firearm. AUSA Lucca asserted that Defendant's criminal history is "not insignificant" and includes prior failures to appear for court. She argued that the presumption that no conditions of release will assure Defendant's appearance or the community's safety applies in this case. Regarding

---

[1]      The undersigned obtained the recording of the June 3, 2026 initial appearance and detention hearing from Case Number 4:26-mj-00016 in the Northern District of Georgia. The undersigned further received a letter from Defendant's assigned counsel in the Northern District of Georgia, Federal Defender Colin Garrett, in support of his release [Doc. 14, SEALED].

Defendant's personal characteristics, she observed that he is unemployed due to the state charges for the same conduct. She noted that Defendant was not yet charged with a firearm offense. AUSA Lucca also pointed to Defendant's lack of ties to the Eastern District of Tennessee.

Assistant Federal Defender Garrett also proceeded by proffer. He stated that Defendant is charged in only one count of the five-count Indictment. Mr. Garrett asserted that before his arrest on the federal charges, Defendant was in Polk County custody on related charges. He maintained that Defendant has lived in Cedartown, Georgia, for forty-nine years, and if released, would return to Cedartown and live with his first cousin. He said Defendant's parents, cousins, and sister all live in Cedartown. Mr. Garrett emphasized Defendant's strong ties to the community in the Northern District of Georgia, where he would reside and be supervised. He said Defendant does not have a passport, has never traveled overseas, and has not traveled outside of Georgia since the 1990s. Mr. Garrett also pointed out that Defendant lacks the resources to flee.

Mr. Garrett disagreed that Defendant had a significant criminal history. He said Defendant has no felonies and his criminal history is limited to some misdemeanor convictions for "non-serious" offenses from 2003. Mr. Garrett maintained that Defendant lawfully owned the firearm seized from his home. He expressed uncertainty about the extent of Defendant's alleged actions because no discovery had been produced.

Magistrate Judge Rains asked how Defendant would get to Knoxville for court appearances. Mr. Garrett said another of Defendant's cousins who owns a landscaping and towing business will hire Defendant and, thus, he will have funds to travel to Knoxville. Mr. Garrett also stated that Defendant would have family support to get to Knoxville. Judge Rains expressed concern about Defendant getting to Knoxville and asked if the Federal Defenders would assist

3

with travel expenses. Mr. Garrett assured the court that the Federal Defenders would provide support for transportation to get Defendant to the Eastern District of Tennessee.

AUSA Lucca argued that Defendant's significant family support did not deter him from criminal conduct. She maintained that instead, he drove a school bus while engaging in the sale of methamphetamine. Accordingly, AUSA Lucca stated that Defendant's family does not appear to have had a positive influence on him.

Noting that the United States Probation Office ("USPO") recommended Defendant's release on conditions, Judge Rains asked the Government about what conditions he should consider if he released Defendant. AUSA Lucca responded that the charging district did not provide potential conditions because the prosecution there said it would ask for a stay if Defendant were released.

Mr. Garrett offered that Defendant will submit to location monitoring, which is a condition of his state release. He also observed that a family member gave a property bond on his house to help pay his bond. Mr. Garrett said Defendant objects to a stay of his release.

Judge Rains said he was inclined to grant a stay to ensure an orderly process. He asked Government's counsel about the timeline for a stay. AUSA Lucca represented that the prosecution in the charging district would move expeditiously.

Judge Rains found that Defendant rebutted the presumption and granted release on conditions including a $10,000 personal recognizance bond. He stayed Defendant's release until 5:00 p.m. the following day to give the Government time to move for a stay. He said if such motion or appeal is filed, he would stay Defendant's release so as not to interfere with proceedings in the charging district. He also noted the presence of confidential information that the Government could not share. Judge Rains found that the Government failed to show that Defendant poses a danger to

himself or the community. He also found Defendant did not present a risk of nonappearance or flight based upon his strong ties to the Northern District of Georgia, which is where Defendant would be supervised, and based upon Defendant's strong family support, including a relative willing to put up his house.

Judge Rains released Defendant on the following conditions: Defendant shall be supervised by the USPO in Rome, Georgia; Defendant shall report immediately to the USPO in Rome, Georgia if released; Defendant shall seek employment in that district and update his supervising officer on his employment status; Defendant shall not obtain a passport, and his travel is restricted to the Northern District of Georgia except for court appearances in the Eastern District of Tennessee; Defendant shall not possess a firearm, nor shall a firearm be located where Defendant resides; Defendant is prohibited from drinking excessively and shall not consume controlled substances; Defendant shall submit to drug testing and treatment if the USPO deems it appropriate; and Defendant shall report all contact with law enforcement to the USPO.

Upon motion of the Government, Judge Rains stayed his release order until 5:00 p.m. on June 4, 2026, to allow the Government to appeal the release order to District Judge Varlan [*See* Docs. 13, 15 & 17].

## III.     JULY 2 EVIDENTIARY HEARING BEFORE THE UNDERSIGNED

On June 3, 2026, the Government filed the Emergency Motion pursuant to 18 U.S.C. § 3145, asking that Judge Varlan revoke Judge Rains's release order and continue to stay the release order until ruling on the Emergency Motion [Doc. 13 pp. 1, 4–5]. The Government argues that because Defendant is charged with a drug trafficking offense with a maximum potential penalty of ten years or more of imprisonment, the Court must apply a presumption that no conditions will reasonably assure his appearance as required and the safety of the community

[*Id*. at 2 (citing 18 U.S.C. § 3142(e)(3)(A))]. It contends that Defendant failed to rebut the presumption and is a danger to the community [*Id*. at 4–5]. It also contends that Defendant presents a risk of nonappearance [*Id*. at 4].

On June 4, 2026, Judge Varlan continued the stay of Judge Rains's release order until the adjudication of the motion to revoke [Doc. 15 p. 2]. Judge Varlan also referred the remainder of the Emergency Motion to the undersigned for preparation of a report and recommendation [*Id*. at 3]. Judge Varlan further ordered Defendant's transport to this district [*Id*. at 3].

Defendant appeared in this district on June 9, 2026 [Doc. 20, Minutes]. At that time, the Court appointed Attorney Michael B. Menefee as counsel for Defendant [*Id*.; Doc. 21]. Defense counsel asked the Court to retain the hearing on the Government's motion to revoke previously set for July 2, at 1:00 p.m., to give him time to prepare for the hearing.

On June 23, 2026, Defendant filed a response to the Government's Emergency Motion, conceding that the presumption applies in this case but arguing that he can rebut the presumption and that conditions exist that will reasonably assure his appearance and the safety of the community [Doc. 25 pp. 1–2].

The parties appeared for an evidentiary hearing on the Government's Emergency Motion on July 2, 2026. Assistant United States Attorney Kevin Quencer appeared on behalf of the Government, and Attorney Michael Menefee represented Defendant Smith, who was also present.

AUSA Quencer proffered that law enforcement had conducted at least three controlled buys from Defendant in the Northern District of Georgia between February 2026 and March 2026, for: eighty-seven grams of methamphetamine on February 24, 2026; twenty-six grams of methamphetamine on March 17, 2026; and twenty-one grams of methamphetamine on or about March 25, 2026. AUSA Quencer proffered, as noted in the Northern District of Georgia's pretrial

services report, that Defendant had a significant criminal history beginning in 1993 and ending in 2019, with a failure to appear charge. The Government asked the Court to consider the Northern District of Georgia's Pretrial Services Report in making its decision [Doc. 25-3, SEALED].

AUSA Quencer proffered that a search warrant was conducted on Defendant's home on or about March 27, 2026. Law enforcement discovered over 750 grams of methamphetamine, two one-hundred dollar bills with serial numbers that had been used to purchase methamphetamine from Defendant in a prior controlled-buy, and several firearms found in Defendant's master dresser, which included a silver black-handled 9 millimeter, a silver 22 revolver, a 38 special, and a 32-calliber silver revolver. AUSA Quencer proffered that law enforcement also found a jar of suspected mushrooms in the bedroom, as well as methamphetamine under a water heater and the television.

Defendant proffered that while he recognized this was a rebuttable presumption case, the Northern District of Georgia found that he had rebutted that presumption. Defendant noted that he has extensive ties to Polk County, Georgia, has lived in Cedartown, Georgia for almost fifty-years, and that his parents and sisters all live there as well. Defendant proffered that prior to his arrest, he had not traveled outside of Georgia since the 1990s, that he had never left the United States and that he did not have a passport. Defendant has arranged to have employment with one of his cousins and live with another. Defendant proffered that there were pending state charges in the State of Georgia for the same conduct alleged here, but that court had let him out on bond, and that his cousins had put their farm and home up for collateral for that bond. Defendant stated that he was subject to electronic monitoring in Georgia if he were to be released and again highlighted that two other courts have found him to not be a danger to the community or a risk of flight.

7

As for his criminal history, Defendant proffered that his failure to appear charge from 2019 was dismissed.[2] Defendant noted that his criminal history included "a lot of" dismissals, that there were two convictions for possession of less than an ounce of marijuana from 1998, a 1993 conviction for furnishing alcohol to a minor, and a 1994 DUI conviction. Defendant categorized his criminal history as "minor" and submitted that there have been no recent charges or convictions. As for the strength of the Government's case, Defendant proffered that he had received discovery, and that the discovery shows three controlled buys in the Northern District of Georgia. Defendant explained that one controlled buy was from an undercover Georgia investigation agent, and that two buys were from a Georgia-based informant, with no evidence connecting Defendant to the Eastern District of Tennessee or to any other person in this conspiracy.

The Government then presented its argument. The Government acknowledged that Defendant had offered some facts as it relates to risk of nonappearance, but stated that Defendant had failed to offer any facts to rebut the evidence of danger to the community. The Government maintained that part of the danger to the community was Defendant's criminal history, but that the danger was primarily related to the conduct in this case: the repeated sale of large quantities of methamphetamine. The Government noted that when law enforcement searched Defendant's house, they found over 750 grams of methamphetamine, a "massive" amount, and several firearms in Defendant's master dresser drawer. The Government provided statistics regarding overdose deaths in the State of Tennessee, as well as statistics of firearms related deaths, and argued that drug overdose deaths are very impactful on this community. The Government maintained that selling drugs was not a hypothetical danger and is inherently dangerous conduct that results in deaths.

---

[2] Defense counsel noted he had not verified this information.

The Government cited to *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010), and noted that the Sixth Circuit has held that certain types of offenders should be detained pending trial and are likely to repeat their criminal conduct. While the Government acknowledged that Defendant may have met his burden as it relates to risk of nonappearance, the Government noted that as for danger, even where Defendant has met his burden, the Court must still consider the presumption favoring detention. The Government argued that the evidence in this case irrefutably demonstrates that Defendant is a significant drug trafficker who has distributed large quantities of methamphetamine and had more to distribute in his home. As for Defendant's ties to the Eastern District of Tennessee, the Government raised that the grand jury has made a probable cause finding that Defendant has committed a crime with connection to this district.

Turning to the § 3142 factors, the Government argued that this was one of the more serious offenses, which was reflected by the mandatory minimum and maximum sentence of life, as well as the Guidelines range of 292 to 365 months of incarceration if convicted, even if his criminal history category is I. As for Defendant's community ties, the Government cited to *United States v. Abrego*, 787 F.3d 830 (M.D. Tenn. 2025). The Government acknowledged that there is debate among the circuits as to what district community ties must relate. The Government submitted that the Court should consider the lack of ties to the prosecuting district as a consideration weighing in favor of detention. While it acknowledged Defendant's ties to Georgia are very deep, the Government highlighted that he would have to appear in the Eastern District of Tennessee if he were released.

As for the weight of the evidence against the person, the Government cited the amount of the methamphetamine Defendant was distributing, as well as the amount of methamphetamine and firearms found in his home. The Government maintained that the probation violations as well as

9

the failure to appear should trouble the Court and that the Court should consider Defendant's criminal history. The Government argued that the evidence was beyond clear and convincing that he poses a danger due to his distribution of methamphetamine in large quantities, coupled with his possession of firearms. Further, given his prior failure to appear charge, probation charges, and the sentence he faces, the Government contended that Defendant posed a risk of nonappearance.

Defendant argued that he was presumed innocent of these charges. Defendant noted that there were proffers of controlled buys and that those all came from the Georgia Bureau of Investigations, as well as local officers in Georgia. Defendant maintained that there was no evidence that Defendant's conduct was connected to the Eastern District of Tennessee. Defendant affirmed that he had no ties with the Eastern District of Tennessee, as he is from Georgia, resides in Georgia, and all the evidence that has been brought to the Court's attention occurred in Georgia. Defendant asserted that to punish him for not having ties to the Eastern District of Tennessee would be unfair.

Defendant stated that he has never been convicted of not appearing in court and will be on an ankle-monitor if released. Defendant asserted that he has charges to face in Georgia and the investigation conducted for this case will be in Georgia.

As for dangerousness, Defendant raised that he has no felony convictions for drug dealing and that his only drug convictions were for possession of marijuana in 1998. Defendant argued that there was no history or any other evidence indicating that Defendant is a danger to the community beyond the allegations that he is a drug dealer. While firearms were found in his residence, Defendant asserted that he is not a felon and is allowed to possess a gun.

10

## IV.   ANALYSIS

The Bail Reform Act of 1984 provides for the release of all persons accused of a federal crime, either on personal recognizance or an unsecured appearance bond, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If release on personal recognizance or an unsecured appearance bond will not reasonably assure the person's appearance or the safety of the community, then the judicial officer shall order that the individual be released on conditions. 18 U.S.C. § 3142(c).

Upon the government's motion, however, the judicial officer may detain a person charged with certain serious federal crimes[3] or who poses a "serious risk" of flight, witness intimidation, or obstruction of justice, if the judge finds, after a detention hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f) & (e). The judge may not detain a defendant unless the government proves by a preponderance of the evidence that the individual is a risk of nonappearance and/or by clear and convincing evidence that the person is a danger to the community or others. *See* 18 U.S.C. § 3142(f).

"If a person is ordered released by a magistrate judge . . . , the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the defendant de novo.[4] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000)

---

[3]     Here, Defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. 18 U.S.C. § 3142(g)(1)(C).

[4]     Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the Government's motion to revoke a release order to a

11

(holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that de novo review is appropriate); *see also United States v. Rosello*, No. 1:21-cr-7, 2021 WL 5759142, at *1 (S.D. Ohio Dec. 4, 2021) (citing *Yamini*, 91 F. Supp. 2d at 1127–29); *United States v. Tolbert*, Nos. 3:09-CR-56 & 3:10-CR-30, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *see also Tolbert*, 2017 WL 6003075, at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order "shall be determined promptly." 18 U.S.C. § 3145(a).

To determine de novo whether Defendant Smith should be released or detained pending trial, the undersigned must first examine whether the presumption of detention set forth in 18 U.S.C. § 3142(e)(3) applies in this case, and if so, whether Defendant rebutted the presumption. If rebutted, the undersigned must then weigh the factors set out in 18 U.S.C. § 3142(g), along with the rebutted presumption, to determine if release on conditions will reasonably assure Defendant's appearance as required and the safety of any person and the community. The Court examines whether clear and convincing evidence shows Defendant to be a danger to the community and/or whether a preponderance of the evidence shows him to be a risk of nonappearance and, if so, whether conditions can mitigate that danger or risk of nonappearance.

---

magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26, 2017 WL 5711438, at *2–3 (E.D. Ky. Nov. 17, 2017), *adopted by* No. 5:17-CR-26, 2017 WL 5710443 (E.D. Ky. Nov. 27, 2017). The district judge will ultimately conduct a de novo review of the detention issue by reviewing the report and recommendation, which considers all the evidence offered to that point. *Id.* at *3.

### A.  Presumption of Detention

Before turning to the § 3142(g) factors, the undersigned finds, and the parties agree, that a presumption in favor of detention applies in this case under 18 U.S.C. § 3142(e)(3). Section 3142(e)(3)(A) provides that, if a defendant is charged with an offense under the Controlled Substances Act, for which a maximum term of imprisonment of ten years or more is prescribed, a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.

The Indictment provides probable cause to believe that the Defendant has committed offenses under the Controlled Substances Act for which he faces a maximum sentence of ten years or more. *See Stone*, 608 F.3d at 945 ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985))). Defendant therefore qualifies for the application of the presumption under § 3142(e)(3). This presumption places the burden of production with Defendant, while the Government retains the burden of persuasion. *Id.* at 945.

The next question, then, is whether Defendant has rebutted the presumption of detention. Defendant's burden to rebut the presumption "is not heavy" but he must come forward with some evidence. *Stone*, 608 F.3d at 945–46. The undersigned questions whether Defendant has carried that burden in connection with the de novo proceedings related to the Government's motion to revoke, including specifically as it relates to the presumption of dangerousness. Defendant offered his significant ties to the community in the Northern District of Georgia, potential employment, and that he would live with his cousin as well as remain on electronic monitoring. But for purposes of this Report and Recommendation, the undersigned will assume Defendant has rebutted the presumption. Under the law of the Sixth Circuit, if a defendant rebuts the presumption, the Court

13

still must consider the presumption in its determination of whether conditions exist that could assure community safety and the defendant's appearance as required. *United States v. Hinton*, 113 F. App'x 76, 78 (6th Cir. 2004) ("The presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" (quoting *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986))); *see also Stone*, 608 F.3d at 945 (explaining that even when a defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial").

### B.     Section 3142(g) Factors

Turning to the § 3142(g) factors, the undersigned first considers the nature and circumstances of the charged offenses. 18 U.S.C. § 3142(g)(1). Defendant Smith is charged, along with eleven named codefendants and unnamed others, with conspiring to distribute 50 grams or more of methamphetamine over a six-month period [Doc. 3 pp. 1–2]. Methamphetamine is a "dangerous drug." *United States v. Bishop*, No. 6:06-CR-10, 2019 WL 2427964, at *5 (E.D. Ky. May 9, 2019), *report & recommendation adopted by* 2019 WL 2427951 (E.D. Ky. June 10, 2019). Moreover, the circumstances of the offense undergird its dangerousness. Here, law enforcement seized over 750 grams of methamphetamine and firearms from Defendant's residence. *United States v. Brooks*, 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023) (explaining that firearms in the context of drug trafficking "suggests a readiness to use or engage in armed confrontations, heightening the risk to law enforcement, innocent bystanders, and potential rivals or competitors in the illicit drug trade"). Defendant was also involved in three controlled buys involving over

14

100 grams of methamphetamine, and the Government asserts that two prisoners in the State of Georgia prison system brokered the sale of kilogram quantities of methamphetamine to Defendant and others over an extended period, totaling more than 4.5 kilograms [Doc. 13 p. 4]. The undersigned finds that the nature and circumstances of the offense show that Defendant presents a serious danger to the community. *See* 18 U.S.C. § 3142(g)(1).

The weight of the evidence of the Defendant's dangerousness and risk of nonappearance also favors detention. 18 U.S.C. § 3142(g)(2). This factor "goes to the weight of the evidence of dangerousness [and risk of nonappearance], not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948; *see also United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." (citation omitted)). Regarding Defendant's risk of nonappearance, Defendant has multiple probation violation charges, as well as a charge for failure to appear. The Government raised that Defendant faces up to life in prison. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties" may "provide a strong incentive to flee"). As for dangerousness, Defendant was involved in three controlled buys for large amounts of methamphetamine, with a subsequent search of his home revealing over 750 grams of methamphetamine and firearms. Indeed, drug trafficking is inherently dangerous, *United States v. Hernandez*, No. 1:02–CR–006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002), and "[i]t is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community," *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020).

Next, the undersigned must consider a host of factors relating to the history and characteristics of the Defendant. 18 U.S.C. § 3142(g)(3)(A). Although Defendant has no history

15

of felony convictions, the bulk of his Defendant's history and characteristics support detention. Defendant is a lifelong resident of Cedartown, Georgia. Defendant has close family ties to his family in Cedartown, Georgia, as demonstrated by his cousin's willingness to allow Defendant to live with him, another cousin's offer of employment, and a family member giving a security bond on his home in Defendant's state case. This family support, however, is balanced by the fact that Defendant was living near family when he engaged in the charged conduct.

Defendant was previously employed as a school bus driver and purportedly arranged his drug sales around his work schedule [Doc. 13 p. 3]. Defendant has a detailed criminal history, beginning at age eighteen with the sale of alcohol to a minor. When Defendant was twenty-three, he was charged with two counts of possession of marijuana and convicted of each. When Defendant was twenty-five, he was charged with two counts of theft by receiving stolen property. Through age twenty-five to twenty-seven, Defendant had three probation violation charges. At age twenty-eight, Defendant pled no contest to driving with a suspended or revoked license. When Defendant was forty-three, Defendant was charged with false imprisonment, criminal trespass, and first-degree cruelty to children. When Defendant was forty-four, he was charged with failure to appear. And finally, Defendant faces state charges for his conduct in this case. *See Tolbert*, 2017 WL 6003075, at *4 (holding that "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention"); *see also United States v. Acevedo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985) (finding that the authors of the Bail Reform Act of 1984 intended for judges to "rely on a defendant's past bad conduct that had led to indictment but not conviction" under some circumstances).

As for "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," 18 U.S.C. § 3142(g)(4), the undersigned finds that the danger Defendant presents to the community is from continued drug trafficking. Defendant is alleged to have participated in a conspiracy trafficking over 50 grams of methamphetamine and many times more than that amount was seized from Defendant's residence in Georgia. Additionally, Defendant kept firearms in his residence. This shows Defendant presents a particular danger to the community—that is, continued drug trafficking—if he were released. *See Hernandez*, 2002 WL 1377911, at *2 (holding that "the risk of continued drug-trafficking while released on bail constitutes a significant danger to the safety of the community").

Thus, the undersigned finds all four of the § 3142(g) factors support detention. The undersigned also observes that, unlike in the Northern District of Georgia, the USPO in this district recommends that Defendant not be released because of his dangerousness and risk of nonappearance. Considering all the § 3142(g) factors and the presumption, assuming it has been rebutted, the undersigned finds that the Government has shown by clear and convincing evidence that Defendant poses a danger to the community and by a preponderance of the evidence that Defendant presents a risk of nonappearance.

The undersigned further finds that no condition or combination of conditions will reasonably assure the safety of the community or Defendant's appearance in this case. The undersigned has considered the proposed conditions offered in connection with the undersigned's de novo review, including that Defendant will live with his cousin, that he will work for another cousin in his landscaping and towing business, that he submit to drug testing, that he not possess firearms, and that he be on location monitoring as ordered by the State of Georgia. But Defendant has three probation violation charges, as well as a failure to appear charge in Georgia. This coupled

17

with Defendant having no ties to this district leaves the undersigned with little confidence that Defendant would follow any conditions the Court would impose, including appearing as required.

## V. CONCLUSION

Based upon a de novo review of the record and all the evidence presented at the detention hearing in the Northern District of Georgia and to the undersigned, and considering the factors set forth in 18 U.S.C. § 3142(g), the presumption, assuming it has been rebutted, and the recommendation of the USPO in this district, the undersigned finds by clear and convincing evidence that Defendant poses a danger to the community and by a preponderance of the evidence that he poses a risk of nonappearance. The undersigned also finds that there are no conditions that would mitigate that danger and reasonably assure the safety of the community or Defendant's appearance as required.

Accordingly, the undersigned **RECOMMENDS** that the District Judge grant Government's Emergency Motion [Doc. 13], revoke the release order, and order that Defendant remain detained pending further proceedings in this case.[5]

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Id.*; *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).

18